Linda Owens was a 19-year veteran air traffic controller. Her work record is consistently competent job performance throughout her years. She committed two operational errors and two operational deviations within a six-month period for which she was removed from the federal service. As a parenthetical, we remind the court that she is currently on medical disability and is not available for reinstatement, but her disability is not permanent and she may become available for reinstatement at a later time. What's the status of medical disability? Is she getting her salary? She's getting a portion of her salary, yes. The removal of Ms. Owens is wrong as a matter of law on two counts, both of which are essentially undisputed, either of which would be sufficient to reverse the decision below. The first point we would like to emphasize relates to the removal penalty. The table of penalties upon which the agency exclusively relied states, and I'm looking at appendix in page 57, paragraph 17 of the table of penalties, the nature of the offense is defined as negligent or careless performance that results in injury or danger of injury to either the individual or to others. Injury or danger of injury. It doesn't say which might conceivably create a potential danger, which could. It says which results in injury or danger of injury. During the proceedings below, the agency conceded in writing twice. First, I'm reading from Memories to the MSPB in appendix 132. Appellant's actions, that is Ms. Owens' actions, did not actually put anyone in danger. Then on the next page of the same submission, the agency states, that was 133 of the appendix, Judge Lind, and the next is 134. I'm quoting from the agency's submission. The agency is not representing that any of these four events actually placed persons or aircraft in danger. Then, in the brief to this court, the agency, again, and I'm reading it from page 12 of the brief to this court. While the agency concedes that none of the four events actually placed persons or aircraft in danger. And then there's the end of the sentence. Each of the OEs and ODs had a potential danger. Well, what the penalty table that they rely upon to remove, Ms. Owens states, does result, did result in injury or danger. Not might have, could have, should have, hypothetically. And in the context of this case, applying the plain language of that definition in the table of penalties is critical. These are air traffic controllers. Anytime they're on duty, anything they do could potentially create injury or danger. Anything. And to not apply the plain language of this definition would subject the most meaningful, technical performance issues to discipline under negligence. And would render the definition impossible to apply. And the distinction between actually causing injury or danger and not, which is what this case is about, also distinguishes this case, this court's case, and Bremer. In Bremer, unquestionably, there was a severe danger created by the alleged negligence. It involved the same table of penalties. And in that case, Bremer's mistake almost created a mid-air collision. But no injury resulted in that case. Thankfully. But in Bremer, if you apply the same standard in this table of penalties, and it was applied in that case as well, it says injury or danger of injury. There was a severe danger of injury in Bremer. The agency has conceded twice below. I'm watching this court that there was no danger here. Pardon me, Judge. Isn't there a danger of injury when aircraft are inadvertently directed into a quote-unquote hot zone where there might be live fire, military training exercises underway? You make my point, Your Honor. Everything controllers do creates a potential for danger. What the agency said here was, and I re-quote the agency, the actions did not put anyone in danger. That's what the definition requires. Was anyone actually put in danger? And the answer is, not my opinion, not substantial evidence. The agency has stated three times that that is not the case. That is a critical, the critical element of the provision under which he was disciplined. But the negligence here was not simply each individual incident, but the frequency of incidents. You've anticipated my second point, if I might, Your Honor. Thank you. The administrative judge below said, even if these were just technical problems, comma, then I'm adding the quote, that was a paraphrase, the frequency of the errors constitutes negligence. I'm reading from appendix and Romans 16 and page 11 of her decision. Unfortunately, the agency's regulation, the agency's regulation, not the collective bargaining agreement, the agency regulation prohibits just that. Appendix 28, this is from agency order 7210.56C. It's at the left-hand column, paragraph E. The number and types of errors shall not be the sole determining factor for performance-based actions. Well, that's the number and types of errors, but that's different from the frequency of errors. Well, you know, Your Honor, if I might respectfully take issue with that. But if you have five incidents over a period of 20 years, that's different from five incidents over a period of two months. In my mind, Your Honor, and I defer to Your Honor as far as the English language, but the agency said the same thing in their brief. They said the agency, the judge didn't take into account the number and types of errors, but rather the frequency of the errors. I have to admit, and maybe my own limitations, I don't even see a semantic difference between the number of errors and the frequency of errors. They're synonyms. Well, it just gave you an example. No. Respectfully, Judge Lynn, five – you're saying frequency within a particular time period, I guess. But what I'm saying is number and types and frequency are words which are synonyms for one another. I don't see any way – I mean, at least that's my – I defer to Your Honor. But to me, those words are interchangeable, and that's the distinction with that entity. But isn't there a difference from a performance point of view? If you commit five errors over a 17-year period of time and you commit five errors over a one-week period of time, isn't that an appropriate and reasonable performance application? Not for purposes of negativeness. Let me try and explain a technical point. I may, if I mutilate the English language, forgive me. Operationally, if I'm – Let me just ask you to elaborate completely. Under E, it's under performance-based actions. When they talk about a performance-based action, there's no reference to negligence in particular in the E part. Not only is there no reference to negligence in the E part, there's no negligence reference anywhere in the agency's policies. They don't even understand or apply the term negligence, except in this case in Bremer, as far as I know. The problem is, if you go back to Appendix 23, a couple pages back, Judge Croson, the definition of operational errors and deviations is obviously – those are terms of argument technically. Neither an operational error nor an operational deviation equates with negligence. You could, to make your point, commit six operational errors in an afternoon, to make an extreme case, and not commit negligence that is not – these are not fault definitions. Or you could commit just one over a 30-year period and commit gross negligence. The terms operational error and negligence do not – are not synonyms, do not transpose. The definitions in this order that they're relying say nothing about whether it was the air traffic controller's fault. All they say is airplanes were within a certain proximity within one another. And indeed, down the bottom of this page, there's a definition of technical violations, and three of the four incidents are undisputedly technical. The first was an operational error of moderate severity, which is not technical. And if I can throw the parenthetical here, you don't think that we're arguing that operational errors or deviations are not serious matters. Of course not. We're not suggesting that. But we're suggesting they – just because someone committed an operational error doesn't mean they were negligent. It doesn't mean they weren't negligent. Because they committed three, it doesn't mean they did – they were negligent or they weren't. A single one can be seriously negligent. Fifteen can be nobody's fault at all. They're just not terms which are transposable from one to the other. So the agency, the only definition we have of what is negligence, the only guideline we have, because the agency doesn't have a policy which says three-in-a-four-month period, too serious within a week, or whatever the policy might be, we have to go to the table of penalties, and the agency has admitted three times now in writing that they did not satisfy those requirements. Because there was no danger. They admit that. They didn't even – they conceded they couldn't even argue. So the negligence that they're left with as a defining point is by the terms of the table of penalties. Mr. Osborne, you're in for a rebuttal. Would you like to – I would like to thank you for your courtesy. Thank you. Ms. Cohen, good morning. Good morning, Your Honor. May it please the Court, we respectfully request that this Court affirm the decision of the MSPB on the MSPB's finding that Ms. Owens was negligent if supported by substantial evidence and removal was a reasonable penalty for her actions. First of all, addressing the issue of danger that counsel brought up, it's clear that all four of her actions created a danger of injury to the occupants of the aircraft. In two instances, there was separation loss between two aircraft, which could have led to a collision, a midair collision. In one instance, the one that you brought up earlier, there was an aircraft that entered a military hot zone, an area where weapons practice was taking place. And while no one was actually injured, and that's what the agency admits, there was no actual injury, there certainly was a danger of injury in all four instances. Let me ask you, and I think you alluded to this perhaps in your brief, this was a performance-based action. That is what we argued in our brief, and I would like to clarify that now. It was her performance, obviously, in making errors is the issue, but the action itself was considered a conduct-based action. We erroneously argued in our brief that it was performance-based and talked about the applicability of the Douglas factors, but the table of penalties, which the agency applied and the administrative judge discussed, only applies to conduct-based removal. So this was actually a conduct-based removal, and that actually brings me to another point that a counsel brought up concerning the quality assurance order that talks about the number and types of errors not being the sole determining factor. That specifically applies to performance-based actions. This was a conduct-based action. There's no prohibition on considering the number and types of errors. Regardless, however, as you pointed out earlier- Can I ask you that? I mean, it seems like something you agreed to hear. I mean, I was confused, too, because I noted the point that this is a table of penalties for misconduct and not for performance. Well, what did the agency say in the get-go? I mean, there's a history of taking this action against her, going to a trial. Was the agency's position that this was conduct or performance? Initially, I don't believe there was a clear position that it was either one. It was just a removal based upon her actions. It appears from the administrative judge's decision that it was treated at that level as a conduct-based action because of the use of the table of penalties, which the judge- And also, what about the standards applied in terms of conduct-based actions? Are there standards unique to misconduct? Is it the same standard for conduct-based actions or performance-based actions? Well, the same standard here in terms of substantial evidence would apply either way. And the same standard would apply at the academic review level in terms of review and evidence required for the conduct-based or performance-based action. You said that that's true, that that's the case. I can't recall whether or not the agency was presuming that the discharge was conduct-based. I believe that's the case. I thought it might be different. I'm not entirely sure. I'd certainly be willing to brief them further if you're interested in that issue. Going back to the language that has been talked about in this table of penalties, is it the government's view that when it says results in injury or danger of injury, is the word danger synonymous with risk? Is that what one would find danger of injury to be, risk of injury? Yes, danger and risk would be synonymous in that if there was a risk in her actions, that injury would occur. There might be a collision or some sort of injury to the aircraft. And then how do you reconcile the statements that the opposing counsel cited in the record as to how they need to describe it? Well, the issue is that there wasn't a very imminent danger. For instance, when the plane entered the military hot zone, there were no weapons being fired at that moment. So it wasn't as if there was an injury that was immediately impending, that something horrible was about to happen, but that there was some danger just in the fact that the aircraft entered that hot zone. That would be a distinction, that there's always some level of danger. But in this case, as opposed to perhaps some other cases, there wasn't a real serious imminent danger of something happening. And certainly we admit that there was no actual injury in any of these cases. That would be the distinction. The other issue here is that the frequency of the errors created a danger of injury. That is, maybe these errors were not very serious, but based upon the fact that she committed four errors within six months, who knows what could have happened if she stayed on duty. It's possible that another error, a much more serious error, could have happened that could have resulted in more immediate danger or even an actual injury. Apparently it was the frequency of these incidents, and in particular the two incidents that occurred after the second round of training, that seemingly supports the position, just according to the AHA, that this warranted a disciplinary action. It transformed from a question of performance to one warranting disciplinary action. Is that the government's position? Yes, that's correct, Your Honor. The first two incidents were certainly treated as performance incidents. Ms. Owens was given skill enhancement training both times. Then what happened was, as soon as she came back from the training, less than ten days later, the second two errors occurred. And at that point in time, similar to what happened in the Bremer case, it was decided by the agency that retraining would not be worthwhile, would not assess the results of her performance, and therefore the- In Bremer, the incident that resulted in disciplinary action was a very serious incident where, shortly following the remedial training, two aircraft were placed on a heading where they were flying directly toward each other. There's no question that it's a very serious matter which, on the heels of remedial training, would warrant some discipline. Here you have relatively minor incidents. The last one, which seemingly affected the AJ, was the placement of this little bee. Before the announcement of the visual contact was confirmed, I forget exactly the facts, but that seemed to tip the scales for the AJ anyway. Any basis for this other than the AJ's? Well, I think part of it was, as I said earlier, the fact that these last two incidents occurred right after the retraining, and the last incident occurred only one day after the third incident. That was certainly part of the reason that I think it would have attracted the AJ's attention. The other issue that the AJ mentioned was sort of her attitude that she took towards the last incident. It was a concern for her future performance. The fact that she mentioned that the pilot should have seen the big plane ahead of him was something that concerned the AJ about her performance, and that was why that was something that stood out particularly for the AJ. That was something, however, that came up in the hearing testimony, and not one of the reasons that the agency decided to remove her in the first place. It was simply the frequency of all four errors, and basically the frequency that was not done. Well, were you suggesting a few minutes ago that even if specific errors don't pose a danger of injury, one could extrapolate from the fact that there are errors being committed, that that may potentially result in danger of injury, and that would be sufficient under the table of penalties? Well, it would be sufficient under the table of penalties, which says danger of injury. But it says careless work or negligence that results in injury. It doesn't say that could potentially signify a problem in the future. Right, right. We're not saying specifically that it has to do with a problem in the future, but it does say negligent or careless work performance that results in injury or danger of injury. Here it was her negligent work performance, her not paying attention or not doing what she was supposed to do, that led to this danger of injury, so that would fit in with the table of penalties. Was Rimmer a performance case or a misconduct case? It was a misconduct case, as well. It was very similar to this case in which they treated the first two incidents that she had as performance issues and gave her retraining, and then similar to what happened in this case, shortly after she came back from retraining, she had this serious incident where the two aircraft almost collided, and at that point, it was treated as a conduct-based removal. That was how the arbitrator in that case treated it. That was how the court treated it, that at some point, performance can be disciplined. At some point, there's no requirement to give additional training. At some point, it becomes a conduct issue, and that was something the court held in record. It would be applicable to this case, too. The first two times, they gave Ms. Owens a chance to improve her performance. She was unable to do so, and at that point, it was decided that additional retraining would not be worthwhile for her, and it turned from a performance-based action into a conduct-based action. It seems to me that you're reading this paragraph in the table of disciplinary offenses in a broad enough way that it would cover each of these individual incidents themselves. But seemingly, no one is taking the position that any of these incidents alone would be enough. Yet, the way you're reading this, negligent or careless work performance that results in a danger, that proposes a risk, all four of these incidents propose the risk. But yet, the government's not taking the position that each of them individually would warrant that kind of discipline. The question is, how many does it take, and how do you square that with the way you were reading this provision? You're reading it, if it should be read that broadly, it should cover each of these incidents. Well, the agency doesn't have any specific guidelines as to how many incidents there would have to be to constitute negligence when you're looking at negligence as a frequency of incidents. But the table itself is not the only guideline for what negligence is, as I think the parties agree. The MSPB has defined negligence as a failure to exercise the degree of care required under particular circumstances which a person of ordinary prudence in the same situation and with equal experience would not omit. So in this case, one single error is, as there was testimony, not necessarily uncommon. I'm sure that most air traffic controllers make one or a few errors over a course of their career. But using the MSPB's definition of negligence, frequency of errors here is really what constitutes negligence. And then there was a failure on her part to exercise a normal degree of care, and that while someone may have had one minor incident over the course of that time period, she had four, and that was what made her behavior constitute negligence, basically. So it's not a question of whether regulatory interpretation or rule interpretation or anything else is a question of evidence. Your argument is that substantial evidence supports the decision that was reached. That's correct, Your Honor. For these reasons and other reasons, I'm ready to request that you confirm the decision of the MSPB. Thank you. Your Honor. We didn't reach out for this table of penalties in this case. They relied on this table of penalties, and I would invite and ask the court to go back and look at what they said. In their briefs below and in the briefs in this case, there was no danger, period. That's what they said. What the counsel said up here was a number of different things. It started to say there's no injury, but there was danger. What they said flapped below and here, no danger. Do you agree that there was danger of injury? I don't agree or disagree. I know what the rule says, and it uses the word danger, and I know what their agreement said, and that is there was no danger. So however you want to use whatever modifier you want to use, determine their briefs below and here is danger and determine the table of penalties is danger. So I don't know that I'm in a position to agree or disagree with Your Honor's suggested alternative phrasing. They used the table of penalties. They used the word danger, and they conceded three times there was no danger. And the table of penalties doesn't talk about frequency. The table of penalties talks about injury or danger, which was clearly present in Bremer and justice clearly not present here. And if I could just, and this isn't based on the record, but the reason, and I'm not arguing a fact in this case, the reason that these cases should be treated as performance cases in almost every case except perhaps the Bremer situation, is the idea of using discipline in an error and deviation case is not a good idea as a general matter because you want people to report them. You don't want to put people in a position that they're worried about being disciplined for reporting operational errors and deviations. The agency has very strict reporting rules because we all need to know about it because we're all going to get out of an airplane soon. Of course there's an exception to that, and it's the Bremer situation where, consistent with this table of penalties, where the negligence created either an injury or in Bremer's case a very serious danger, and their concession here isn't that there was just a little danger or not very much danger. They said it flatly three times, and they're stuck with that, I think. I don't see how you get out of it. One other record reference, it's not in the appendix. It's a trial transcript at 142 to 145. I'm not at all sure that you're interested in this, but the administrative judge got off on this V business and recklessness. It has to do with her testimony, which is at pages 142 through 145 of the transcript, and I went back and read it. She describes a big airplane, and she's trying to describe, and I'll leave it to your honors to read the transcript. But if you're an air traffic controller, the way she described it is the way you would normally describe it. I think this all happened two years after the fact. I think the administrative judge had a reaction to it, and I was curious, so I went back and read it, and realized they didn't put it in the appendix, which I apologize for, but it is in the record, and it doesn't come off the page to me. Maybe it was the context, maybe it was her body language, but in any event, it was a reaction to testimony two years after the fact. She was not charged with recklessness or being flippant. She was charged with negligence, and, to beat the dead horse, again, it was the agency which relied upon this table of penalties. It was the agency which invoked this provision, and it was the agency which has now conceded three times that it doesn't apply on these claims. So it's not a substantial evidence. I don't particularly like appealing substantial evidence cases. This is a no evidence case and a no evidence by the agency's admission, readmission, and re-readmission. I'm happy to answer other questions that you might have, but that's it. Thank you very much for your time. Thank you very much. I thank both counsel. The case is submitted.